**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP, *a Minnesota limited partnership*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 2:20-cv-03741-DCN |
| TOWN OF MOUNT PLEASANT and KENT PRAUSE, III, *Zoning Administrator & Planning Division Chief for the Town of Mount Pleasant*, | ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

The following matter is before the court on plaintiff Adams Outdoor Advertising Limited Partnership's ("Adams Outdoor") motion for summary judgment, ECF No. 40, and defendants Town of Mount Pleasant (the "Town") and Kent Prause, III's[1] ("Prause") (together, "defendants") motion for summary judgment, ECF No. 41. For the reasons set forth below, the court grants defendants' motion for summary judgment and denies Adams Outdoor's motion for summary judgment.

## I.  BACKGROUND

This matter arises out of a constitutional challenge to provisions of a sign ordinance enacted by the Town. Like many municipalities across the country, the Town of Mount Pleasant regulates signs within its jurisdiction. Those regulations are outlined

---

[1] Michael Robertson assumed the Zoning Administrator position upon Prause's retirement. Pursuant to Federal Rule of Civil Procedure 25(d), Robertson should be automatically substituted for Prause as a defendant in this lawsuit, but the procedural irregularity is moot given that the court grants summary judgment in defendants' favor.

in the Mount Pleasant Code of Ordinances § 156.150, et seq. (the "Sign Ordinance" or "Ordinance").

Adams Outdoor is a limited partnership engaged in the outdoor advertising business, including the sale and lease of billboard space and the securement of real property and property rights for advertising purposes, both within the Town and across the country. In September 2019, Adams Outdoor submitted nine permit applications to the Town to install new billboards or convert certain static billboards into digital billboards. In October and November 2019, the Town denied these applications. The denial letters issued by the Town's then-Zoning Administrator, Prause, can be categorized into three categories. First, five of the sign permit applications sought permission to "install new and/or convert existing static billboards to a digital format." ECF No. 40-9 at 1. Prause denied those applications based on Sign Ordinance § 156.162(P), which prohibits "electronic digital or analog signs of any size or location, in which the display or advertising material may change periodically." Id. Second, two permit applications sought to install new static billboards. Prause denied those applications for a failure to meet Sign Ordinance § 156.159, which permits "off-premises signs"[2] only if they are in the "L1, Light Industrial District" and only if they meet certain

---

[2] The Sign Ordinance provides the following definitions of an "off-premises sign" and "on-premises sign":

**OFF-PREMISES SIGN.** Any sign located, or proposed to be located, at any place other than within the same platted parcel of land on which the specific business or activity being identified on such sign is itself located or conducted. A noncommercial speech sign shall not be considered an off-premises sign, but if located on commercially zoned property or commercial uses in planned development districts, it must adhere to all other regulatory requirements for commercial signage such as size, number, height, area, setbacks, and the like. Nothing contained in this definition shall be

2

size, height, and setback requirements.[3] Id. at 2.  Third, Prause denied the final two applications that sought permits for "new static or digital billboards" based on both Sign Ordinance § 156.150 and § 156.162(P).  Id. at 3–4.

On October 23, 2020, Adams Outdoor filed the instant action against defendants, challenging the Sign Ordinance under various provisions of the South Carolina and United States Constitution.  ECF No. 1, Compl.  On January 17, 2023, Adams Outdoor filed its motion for summary judgment.  ECF No. 40.  Defendants responded in opposition on January 31, 2023, ECF No. 49, and Adams Outdoor replied in support of its motion on February 14, 2023, ECF No. 57.  On January 17, 2023, defendants filed their motion for summary judgment.  ECF No. 41.  Adams Outdoor responded in opposition on January 31, 2023, ECF No. 48, and defendants replied in support of their motion on February 14, 2023, ECF No. 58.  The court held a hearing on the motions on June 13, 2023.  ECF No. 67.  As such, the motions have been fully briefed and are now ripe for review.

---

construed to apply to noncommercial messages or information placed on any sign.

**ON-PREMISES SIGN.** A sign that advertises activities, goods, products and the like that are available within the building or on the lot where the sign is located.

Sign Ordinance § 156.151.  In other words, off-premises signs are signs advertising products or services not available on the same premises and/or directing people to other locations; on-premises signs are signs advertising products or services offered on the same premises as the signs.

[3] Specifically, off-premises signs are only permitted in the zoning district if they 1,000 feet away from other off- or on-premises signs, set back from the nearest road surface by at least twenty feet, and do not exceed a height of twenty feet above the roadbed and 150 feet of advertising surface.  Sign Ordinance § 156.159(B).

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

## III.  DISCUSSION

Adams Outdoor challenges the constitutionality of the Sign Ordinance under both the United States Constitution and the South Carolina Constitution by claiming that it has the right to engage in speech that is protected by Article 1, § 2 of the South Carolina Constitution, and the First and Fourteenth Amendments of the United States Constitution. Compl. ¶ 13.  Specifically, the complaint brings five causes of action: (1) a facial challenge to the constitutionality of the Sign Ordinance as a content-based restriction on

speech, Compl. ¶¶ 36–58; (2) a facial challenge to the constitutionality of the Sign Ordinance on the grounds that it is vague, ambiguous, and overbroad, id. ¶¶ 59–88; (3) a facial challenge to the constitutionality of the sign ordinance as a prior restraint on speech, id. ¶¶ 89–101; (4) a facial challenge to the constitutionality of the Sign Ordinance as a violation of equal protection and/or substantive due process, id. ¶¶ 102–11; and (5) a challenge to the constitutionality of the Sign Ordinance "as applied" to defendants' actions, id. ¶¶ 112–25.

Defendants raise a couple threshold issues related to standing and justiciability. The court addresses those concerns first and finds that Adams Outdoor lacks standing to bring most of its second, third, and fourth causes of action. The court then reviews the substantive merits of the remaining claims.

### A. Collateral Estoppel

Adams Outdoor is or has been involved in several cases relating to sign regulations across the country. In 2021, Beaufort County, South Carolina brought criminal citations against Adams Outdoor in state court based on alleged violations of the county's sign ordinance. See Adams Outdoor Advertising Limited P'ship v. Beaufort Cnty., 2023 WL 1801827, at *2 (D.S.C. Feb. 7, 2023), appeal filed (referencing and describing the state court action). On July 15, 2021, Adams Outdoor filed an amended complaint in the District of South Carolina against Beaufort County, challenging various parts of Beaufort County's sign regulations. Id. at *1. The case was assigned to Judge Hendricks, and on February 7, 2023, the court granted Beaufort County's motion to dismiss. Id. Judge Hendricks dismissed Adams Outdoor's claims related to the state action as barred by the abstention doctrine and dismissed the remaining claims on

mootness[4] and standing grounds.  Id. at *2–7.  Adams Outdoor appealed, and that case is now pending before the Fourth Circuit.

Separately, in 2020, Adams Outdoor brought a suit against the City of Madison, Wisconsin in the Western District of Wisconsin.  Adams Outdoor Advertising Limited P'ship v. City of Madison ("City of Madison I"), 2020 WL 1689705 (W.D. Wisc. Apr. 7, 2020), aff'd, 56 F.4th 1111 (7th Cir. 2023) ("City of Madison II").  In that case, Adams Outdoor challenged the City of Madison's sign ordinance on First Amendment grounds, claiming that the ordinance drew content-based distinctions between billboards and other kinds of signs.  Id. at *1–2.  The court granted summary judgment in favor of the City of Madison.  As relevant to this motion, the court determined that Adams Outdoor lacked standing to challenge a city's entire ordinance where portions of the ordinance did not affect Adams Outdoor or its business.  Id. at *4.  The court also determined that the sign ordinances at issue were content-neutral and did not violate the First Amendment.  Id. at *15–17.  On appeal, the 7th Circuit affirmed the district court's decision on First Amendment grounds.  City of Madison II, 56 F.4th at 1119–20.

Finally, on May 20, 2022, Adams Outdoor filed an amended complaint in another case in the Western District of Wisconsin, this time against the City of Middleton, Wisconsin.  Adams Outdoor Limited P'ship v. City of Middleton, 2023 WL 3884551, at *2 (W.D. Wisc. June 8, 2023).  Once again, the court granted summary judgment in the municipality's favor, finding that Adams Outdoor did not have standing to challenge

---

[4] The mootness issue was decided based on an amendment to Beaufort County's sign ordinance that addressed many of Adams Outdoor's original challenges.  Mootness is not at issue in this case, but the Beaufort County court's discussion on standing is still relevant.

provisions of the sign ordinance that did not relate to billboards. Id. at *4. The court also partially granted sanctions after Adams Outdoor continued to pursue the claim that the ordinance's off-/on-premises distinction was unconstitutional, which went against the Supreme Court's ruling in City of Austin v. Reagan National Advertising of Austin, LLC, 142 S. Ct. 1464 (2022). Id. at *7–8. The court discusses City of Austin in the context of Count 1 later in this order.

Although defendants referenced the City of Madison cases in their motion for summary judgment, they did not argue that those decisions are entitled to preclusive effect until their response to Adams Outdoor's motion. ECF No. 49 at 4. Once they did, defendants essentially invoked defensive collateral estoppel, which "precludes relitigation of an issue by a plaintiff who has lost the same issue in a prior case." Alcon Assocs., Inc. v. Odell Assocs., Inc., 2005 WL 3579057, at *2 (D.S.C. Dec. 29, 2005); see In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979)). In reply, Adams Outdoor argues that defendants waived any estoppel or res judicata defense because they failed to raise it as an affirmative defense. ECF No. 49 at 4–5. Adams Outdoor further claims that even if the court allowed defendants to make the argument, Supreme Court authority requires the court to conduct a separate inquiry into a unique regulatory scheme, and Adams Outdoor has not previously litigated any challenges to the Sign Ordinance at issue in this case. Id. at 2–3.

Adams Outdoor is right that issue preclusion is an "affirmative defense[] that must be pleaded," and a party may waive the defense when it "has not properly and timely asserted [it]." Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 710 F.3d 527,

533 (4th Cir. 2013) (first citing <u>Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 350 (1971), and then citing <u>Arizona v. California</u>, 530 U.S. 392, 410 (2000)). And although the <u>City of Madison</u> cases that defendants rely upon were not decided until after defendants filed their answer, "[e]ven when a preclusion defense is not available at the outset of a case, a party may waive such a defense arising during the course of litigation by waiting too long to assert the defense after it becomes available."  <u>Id.</u> (citations omitted).

On the other hand, the fact that defendants did not timely raise the issue does not necessarily foreclose the court's consideration of collateral estoppel.  Collateral estoppel may in certain circumstances be raised by the court <u>sua</u> <u>sponte</u>.  <u>See</u> <u>Eriline Co. S.A. v. Johnson</u>, 440 F.3d 648, 655 (4th Cir. 2006) (citing <u>Arizona</u>, 530 U.S. at 412–13) (holding that the policy weighing against relitigation of issues that a court has already decided may justify <u>sua</u> <u>sponte</u> consideration of collateral estoppel); <u>Browning v. WVDOC</u>, 2022 WL 612348, at *8 (N.D. W. Va. Feb. 7, 2022) ("[A] court may <u>sua</u> <u>sponte</u> raise issues of preclusion in 'special circumstances,' even though the defense has not been raised."). Such considerations arguably apply here, where defendants assert that there are no less than three precedential decisions, including one from this same court and one which was adopted by a federal appellate court.  The court therefore assumes, without deciding, that the issue of collateral estoppel can be addressed.

Before proceeding to decide whether collateral estoppel <u>applies</u>, it is also important to establish what "issue" is alleged to be precluded from being decided. Adams Outdoor seems to believe that defendants wish to preclude litigation of the entire case; <u>i.e.</u>, the matter of whether the Sign Ordinance is constitutional.  <u>See</u> ECF No. 57 at

3 ("Adams has not previously litigated or even asserted claims or issues challenging the

constitutionality of the Town's Ordinance, or Defendants' application of the same . . . .").

The court does not read defendants' argument the same way.  Defendants do not contend

that a tribunal has already issued a judgment on whether Adams Outdoor may bring a

challenge against the Town of Mount Pleasant's Sign Ordinance.  Rather, most of

defendants' argument on issue preclusion are dedicated to whether courts have already

issued judgments on the issue of <u>standing</u> to challenge aspects of an ordinance that do not

relate to Adams Outdoor or its business.  <u>See</u> ECF No. 57 at 4 ("The same is true in this

case.  The Plaintiff lacks standing to challenge the constitutionality of provisions in the

Sign Ordinances that have nothing to do with [their permits] . . . .").  Although Adams

Outdoor essentially argues that res judicata does not apply because it is not bringing the

exact same claims in this case, collateral estoppel "can be applied to narrower portions of

an action than is the case for res judicata."  <u>United States v. Tatum</u>, 943 F.2d 370, 382

(4th Cir. 1991).  Standing is indeed a narrower (albeit significant) issue, and dismissal on

jurisdictional grounds may have an issue-preclusive effect on future jurisdictional issues.

<u>Hawkins v. I-TV Digitalis Tavkozlesi</u>, 935 F.3d 211, 221 n.5 (4th Cir. 2019) (citing <u>Perry</u>

<u>v. Sheahan</u>, 222 F.3d 309, 318 (7th Cir. 2000)).  Therefore, at issue is whether the prior

decisions on <u>standing</u> meet the test for issue preclusion.

 Collateral estoppel provides that once a court of competent jurisdiction actually

and necessarily determines an issue, that determination remains conclusive in subsequent

suits.  <u>Weinberger v. Tucker</u>, 510 F.3d 486, 491 (4th Cir. 2007).  The doctrine precludes

the re-litigation of an issue if: (1) the issue sought to be precluded is identical to one

previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the

determination of the issue was a critical and necessary part of the decision in the prior proceeding, (4) the prior judgment is valid and final; and (5) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the previous forum. Eddy v. Waffle House, Inc., 482 F.3d 674, 679 (4th Cir. 2007). Upon review, the court finds that collateral estoppel does not apply because the other cases cited by defendants turned on different considerations, even on the issue of standing.

The first element of the test asks whether the issue contested here is identical to the one previously litigated. This is effectively the only contested element. Both Judge Hendricks and the Western District of Wisconsin conducted thorough analyses on Adams Outdoor's permit applications in those cases and decided that the company had no standing to challenge inapplicable portions of the ordinances. In Beaufort County, for example, the court ruled that Adams Outdoor had not satisfied the injury-in-fact requirement because it was only seeking to reconstruct billboards and install new digital billboards; therefore, regulations governing the duration, location, and other aspects of signs were irrelevant. 2023 WL 1801827, at *6. Similarly, in City of Madison I, the court held that Adams Outdoor had standing to challenge the ban on billboards, but not the entire ordinance. 2020 WL 1689705, at *4. The court reasoned that Adams Outdoor was challenging definitions, processes, and other provisions in the ordinance that regulated types of signs which Adams Outdoor itself had not sought to erect. But therein lies the difference. Although defendants similarly assert that several provisions of the Sign Ordinance were peripheral to Adams Outdoor's business, the court cannot begin to evaluate that argument without considering the specific contours of the Ordinance provisions at issue here. In cases where courts determined that an issue of standing was

subject to preclusion, the plaintiff is typically on notice that the facts giving rise to

standing in the second case are identical in all material respects.  See Perry, 222 F.3d at

318 (affirming the dismissal of a case on issue preclusion grounds because the "new

factual allegations" relating to standing were minimal and already known to the plaintiff

following the first case).  Since the standing issue is not identical cross these cases, the

court declines to find that collateral estoppel applies.

### B.  Standing

Given that collateral estoppel does not apply, the court considers the issue of

standing de novo.  Nevertheless, the court reaches the same conclusion as the other courts

and finds that Adams Outdoor lacks standing to bring several of its claims.

Defendants concede that Adams Outdoor has standing to sue under its first cause

of action—the facial challenge to the content-based distinctions in the Sign Ordinance—

as well as "limited standing" to bring an as-applied challenge to the Sign Ordinance

under the fifth cause of action.[5]  ECF No. 41-1 at 7.  In all other respects, defendants

argue that Adams Outdoor lacks standing to bring facial challenges against the provisions

of the Sign Ordinance.[6]

---

[5] In other words, defendants challenge whether Adams Outdoor has standing to bring Counts 2, 3, and 4.  Count 2 challenges the Ordinance on vagueness, overbreadth, and procedural due process grounds.  Compl. ¶¶ 60–83.  Count 3 alleges that the review process, as set forth by Sign Ordinance § 156.153, creates an unconstitutional prior restraint on speech.  Id. ¶¶ 89–96.  Count 4 alleges that defendants violated equal protection and substantive due process rights by restricting and regulating "Off-Premises Signs" in a manner that is not content neutral.  Id. ¶¶ 102–11.

[6] In a separate equitable-estoppel argument, Adams Outdoor claims that defendants should not be permitted to argue lack of standing because Adams Outdoor previously submitted an interrogatory requesting defendants identify all bases it had to support that argument, to which defendants responded "None at this time.  To the extent that any factual information is developed through further discovery, this interrogatory will be supplemented."  ECF No. 48 at 14; ECF No. 48-9 at 2–3.  Defendants never

Federal courts' standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992), and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," Allen v. Wright, 468 U.S. 737, 751 (1984). The Article III limitations are familiar. First, a plaintiff must demonstrate an "injury-in-fact," which is a "concrete and particularized . . . invasion of a legally protected interest." Id. Second, "there must be a causal connection between the injury and the conduct complained of, meaning that the injury must be "fairly . . . trace[able] to the challenged action of the defendant." Id. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. If a plaintiff does not have Article III standing, the court must dismiss the action for lack of subject matter jurisdiction. See Middleton v. Andino, 488 F. Supp. 3d 261, 278 (D.S.C. 2020), appeal dismissed as moot, 2020 WL 8922913 (4th Cir. Dec. 17, 2020) ("Standing implicates the court's subject matter jurisdiction and is governed by Federal Rule of Civil Procedure 12(b)(1).").

Although the Supreme Court has not exhaustively defined the prudential dimensions of the standing doctrine, it has explained that prudential standing encompasses at least another three principles: (1) "the general prohibition on a litigant's raising another person's legal rights," (2) "the rule barring adjudication of generalized

---

supplemented the response. Although the response was perhaps ill-advised, it is not dispositive. Article III standing implicates a court's subject-matter jurisdiction, and the plaintiff ultimately bears the burden of proving that standing exists. Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., 523 F.3d 453, 459 (4th Cir. 2008). Both principles mean that even if the court assumed defendants provided no argument on the issue, the court must independently evaluate Adams Outdoor's standing to sue.

grievances more appropriately addressed in the representative branches," and (3) "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 126 (2014) (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004)). "[T]he part[y] invoking federal jurisdiction[] bear[s] the burden of establishing these elements." Disability Rights S.C. v. McMaster, 24 F.4th 893, 899 (4th Cir. 2022) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)) (internal quotation marks omitted).

Although the court has not found another court's ruling on standing to be preclusive in this case, "the law of billboards is a law unto itself," and other court decisions have articulated several key principles that apply here. See Cafe Erotica of Fla., Inc. v. St. Johns Cnty., 360 F.3d 1274, 1285 (11th Cir. 2004) (citing Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 501 (1981)) (internal quotation marks omitted). As a fundamental matter, "[t]he standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to render judicial resolution appropriate." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 153 (4th Cir. 2000). "[A] plaintiff must establish that [it] has standing to challenge each provision of an ordinance by showing that [it] was injured by application of those provisions." Covenant Media of SC, LLC v. City of N. Charleston ("North Charleston"), 493 F.3d 421, 430 (4th Cir. 2007) (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 226 (1990)) (other citations omitted). In the context of billboard-law challenges, this means that a company challenging a sign ordinance does not have "a passport to explore the constitutionality of every provision of the [ordinance]." Id. at 430; accord Maverick Media Group, Inc. v. Hillsborough Cnty., 528 F.3d 817, 822 (11th Cir. 2008) ("[A] plaintiff may not attack any

13

provision of an ordinance under which he has not suffered a real injury in fact."). Stated another way, the injury-in-fact requirement means that a plaintiff "cannot leverage its injuries under certain, specific provisions to state an injury under the sign ordinance generally." Get Outdoors II, LLC v. City of San Diego, 506 F.3d 886, 892 (9th Cir. 2007); see also Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 350 (6th Cir. 2007) (holding that a billboard company's standing to sue under one provision of a sign code "does not magically carry over to allow it to litigate other independent provisions of the ordinance"). The issue is therefore whether Adams Outdoor's interest in the Sign Ordinance is properly limited to (1) the on-/off-premises distinctions and (2) the ban on digital signs.

According to defendants, Adams Outdoor's second, third, and fourth causes of action challenge provisions of the Sign Ordinance that do not apply to Adams Outdoor, and it lacks standing as to those counts. The court analyzes each cause of action in turn.

### 1. Count 2

Adams Outdoor's second cause of action—which challenges the Ordinance on vagueness, overbreadth, and procedural due process grounds—is largely emblematic of the claims in the entire complaint. First, the count alleges that several definitions in the Sign Ordinance render the Sign Ordinance vague, ambiguous, or overbroad. Compl. ¶¶ 60–76, 78. Second, it alleges that several provisions in the Sign Ordinance require the Zoning Administrator to form a subjective opinion or otherwise perform a subjective or ad hoc determination. Id. ¶¶ 60–75, 77, 79. Third, the count alleges that Sign Ordinance § 156.153 fails to specify a timeframe for the Town and/or Zoning Administrator to issue their decisions. Id. ¶ 80. Fourth, it alleges that Sign Ordinance § 156.162(P) is

14

overbroad because it completely prohibits all electronic or digital analog signs with "no stated or justifiable reason." Id. ¶ 81. Finally, the count alleges the Sign Ordinance improperly restricts and prohibits all "Off Premises Signs." Id. ¶¶ 82–83.

The court finds that under Count 2, Adams Outdoor is mostly challenging provisions of the Sign Ordinance that did not relate to its sign-permit applications. First, Adams Outdoor claims that a number of definitions within the Sign Ordinance's definitions section are unconstitutionally vague or ambiguous. For example, Adams Outdoor challenges the Ordinance's definition of terms such as "Interpretative Sign," "On-Site Advisory Signs," and "Window Sign," even though it does not seek to erect any of these kinds of signs. Id. ¶¶ 61, 63, 70.

Adams Outdoor similarly challenges provisions in the Sign Ordinance that regulate types of signs that Adams Outdoor did not seek to erect by arguing that those provisions fail to properly curtail the Zoning Administrator's discretion. But Prause denied Adams Outdoor's applications based on a failure to adhere to Sign Ordinance § 156.162(P), which prohibits electronic digital or analog signs, and Sign Ordinance § 156.159, which prohibits "off-premises signs" that fail to meet certain size, location, and setback requirements. Since no other definitions or provisions were applied by Prause when denying the applications, Adams Outdoor lacks standing to challenge those other provisions, even if they were unconstitutionally vague and/or improperly presented the Zoning Administrator with unlimited discretion. See North Charleston, 493 F.3d at 430 (holding that where a sign company was found to have violated a spacing requirement, it had no standing to challenge other substantive provisions of the sign

regulation because it "could not have suffered any substantive constitutional injury due to the other provisions").

To be sure, since filing the complaint, Adams Outdoor has articulated a more nuanced argument regarding standing, perhaps drawing on its experiences from other cases. In essence, Adams Outdoor contends that the Ordinance, when read as a whole, "splits" the regulations of signs "into subcategories, based on content," thus signaling "preferential treatment based on subject matter." ECF No. 40-1 at 6–7. Adams Outdoor argues that the Ordinance accomplishes this by effectively creating de facto exclusions from the off-premises-sign restriction simply by virtue of the fact that certain signs are not defined as "off-premises sign[s]." Id. at 8. Namely, Adams Outdoor highlights that signs such as "Real Estate Signs," "Project Signs," "Construction Signs," and "Special Event Signs" are technically off-premises signs yet do not require permits and are not subject to the requirements in Sign Ordinance § 156.159. Id. at 10 (citing Sign Ordinance §§ 156.151, 156.153(B)(1), 156.158(F), 156.160). For example, the company claims "Special Event Signs" are like off-premises signs in that they "announc[e] activities occurring at a different place than the sign"; however, since they are delineated from off-premises signs, they are not subject to the size, location, and setback requirements of § 156.159. Id. As another example, Adams Outdoor claims that "Project Signs" allow construction project sites to display the name of the company hired for the project on a sign such that the sign "is intended to be an advertisement." ECF No. 40-1 at 33 (citing deposition testimony from the Town's 30(b)(6) representative).

Defendants reject the premise that such signs are akin to off-premises signs. ECF No. 49 at 11 ("[B]illboards [] are distinct from 'comprehensive development project

signs,' 'real estate signs,' and 'construction signs.'").  Per defendants, such signs are distinguishable because they are meant to serve identification purposes only, are temporary rather than permanent, and are "meant to be located on the real property where the project to which it pertains is ongoing," among other reasons.  ECF No. 49 at 11–13 (arguing that each of those signs are "more akin to an 'on-premises sign'").

Defendants do not address every single sign type raised by Adams Outdoor (for example, "Special Event Signs"), but in any event, the court need not fully resolve the debate over whether the other signs are functionally equivalent to off-premises signs. While perhaps creative, the argument is nevertheless a dead end.  Other courts have considered similar arguments and concluded that where ordinance "exemptions" were not specifically applied to the plaintiff, they do not provide a basis for standing.[7]  In one case, for example, a sign company challenged a sign ordinance that exempted certain signs from a permit requirement, including public signs, political signs, and construction signs. GEFT Outdoor, L.L.C. v. City of Evansville, 2023 WL 1111605, at *1 (S.D. Ind. Jan. 12, 2023), appeal filed (Jan. 27, 2023).  The court rejected the plaintiff's argument that it had standing to challenge the sign ordinance as content-based due to those exemptions, finding that since the plaintiff's "inability to erect its proposed billboard come[s] from the Ordinance's size and other physical restrictions," any "content-based provisions of the Sign [Ordinance] do not affect [the plaintiff] and do not prohibit [it] from constructing its billboard."  Id. at *4 (citing Leibundguth Storage & Van Serv., Inc. v. Vill. of Downers

---

[7] Adams Outdoor points to one of its signs depicting a sunflower in support of Ukraine, apparently to show that the line between certain signs (e.g., political signs) is blurred, but there is no evidence that it ever applied for a Political Sign under the Sign Ordinance.  ECF No. 40-16.

Grove, 939 F.3d 859, 861 (7th Cir. 2019)).  In other words, even if the exceptions for

political signs and construction signs were in fact unconstitutional, the plaintiff "still

would not be able to erect its proposed billboard because the physical standards prevent it

from doing so."  Id.

In another case, a sign company challenged an ordinance regulating signs that

contained Electronic Message Display Systems ("EDMS").  Lamar Co., LLC v.

Lexington-Fayette Urban Cnty. Gov't, 2023 WL 3956149, at *1 (E.D. Ky. June 12,

2023).  According to the plaintiff in that case, the provision impermissibly allowed

exceptions for certain zoning categories and further exempted certain types of signs—

such as "Political Signs, Real Estate Signs, and Incidental Signs"—from the permit

requirement altogether.  Id. at *1–2.  When the plaintiff asserted that it was injured by the

exceptions to the EDMS-sign requirements, the court disagreed.  While the court went as

far as to find that the plaintiff may have been injured by the exceptions, it ultimately held

that the plaintiff could not demonstrate that any injury could be redressed so long as the

size requirements used to deny the application remained.  Id. at *9; see also Outdoor One

Commc'ns, LLC v. Charter Township of Canton, 2021 WL 5974157, at *3 (6th Cir.

2021) (rejecting the plaintiff's challenge to exemptions contained in the sign ordinance

because notwithstanding the categorization of the plaintiff's signs, they failed to meet the

ordinance's restrictions); Road Space Media, LLC v. City of Birmingham, 2023 WL

2617397, at *8 (N.D. Ala. Mar. 23, 2023) (holding that the plaintiff did not have standing

to challenge provisions of an ordinance regulating on-premises signs—despite the

plaintiff's claim that the ordinance essentially exempted such signs from a cap-and-

replace provision applicable only to off-premises signs—because the on-premises

regulations "did not cause the denial of [the plaintiff]'s applications for <u>off</u>-premises signs").  Those principles are soundly applied here: even if Adams Outdoor is right that the Sign Ordinance draws content-based distinctions by creating de facto exemptions for certain content, it has not demonstrated that any injury <u>it</u> suffered (<u>i.e.</u>, denied permits) would be redressed by finding the exemptions unconstitutional.

　　　　As some of those courts cited above further explained, the doctrine of severability further illustrates the issue with redressability.  <u>See, e.g.</u>, <u>Lamar Co.</u>, 2023 WL 3956149, at *9 (exploring "the intersection of redressability and severability"); <u>GEFT Outdoor</u>, 2023 WL 1111605, at *3 ("[S]everability of an ordinance is properly addressed during the jurisdictional inquiry for purposes of analyzing the redressability prong of standing.").  South Carolina law recognizes that if any provision of an ordinance is held invalid, the invalidity does not affect other provisions of the ordinance which can be given effect, and the violating provision is considered severable.  <u>See</u> <u>Petersen v. City of Clemson</u>, 439 S.E.2d 317, 321 (S.C. Ct. App. 1993) (citing <u>Shumpert v. S.C. Dep't of Highways & Pub. Transp.</u>, 409 S.E.2d 771, 774 (S.C. 1991)) (recognizing the severability of a provision within a city ordinance).  Here, Adams Outdoor's failure to demonstrate redressability can be visualized by the fact that even if the exemptions were impermissibly content based, they would be severable and would have no effect on the provisions that were cited in the denial of Adams Outdoor's applications.  Put another way, Adams Outdooor argues that the provisions for Real Estate Signs, Project Signs, Construction Signs, and Special Event Signs are supposedly unconstitutional.  But even if the court found that those provisions were unconstitutional, Adams Outdoor's

applications would still be denied due to the size, location, and setback restrictions, which the court later finds to be content neutral.

For those reasons, the court finds that Adams Outdoor lacks Article III standing to challenge the definitions and provisions raised in Count 2.  As a concluding note, Adams Outdoor argues that under the overbreadth doctrine, a litigant has standing to bring an overbreadth claim to challenge how a proscription is applied to others.  ECF No. 48 at 20–21.  Adams Outdoor is partially correct.  The overbreadth doctrine functions an exception in First Amendment cases to standing requirements by allowing litigants "to challenge a statute, not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973).  But Adams Outdoor's attempt to apply the doctrine encounters two problems.  First, "[b]ecause it destroys some good along with the bad, invalidation for overbreadth is 'strong medicine' that is not to be casually employed."  United States v. Hansen, __ S. Ct. __, 2023 WL 4138994 (2023).  To justify invalidation on overbreadth grounds, "a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."  Id. (cleaned up).  Adams Outdoor fails to make any arguments about other unconstitutional applications of the Ordinance, much less whether there would be a substantial overreach; it only asserts generally that the overbroad definitions and provisions have the potential to affect others, such as its customers.  See ECF No. 48 at 15 ("[T]his litigation will dictate the future of Adams' business and Adams' and its customers' access to mediums of speech in the Town.").

Second, and more importantly, the overbreadth doctrine does <u>not</u> eliminate the need for Article III standing.[8]  <u>See</u> <u>Prime Media, Inc. v. City of Brentwood</u>, 485 F.3d 343, 350 (6th Cir. 2007) (citing <u>Virginia v. Am. Booksellers Ass'n, Inc.</u>, 484 U.S. 383, 392–93 (1988)) ("Because overbreadth creates an exception only to the prudential standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment."); <u>see also</u> <u>Peterson v. Nat'l Telecomms. & Info. Admin.</u>, 478 F.3d 626, 634 (4th Cir. 2007) ("[A] party asserting overbreadth standing must still demonstrate a distinct and palpable injury.") (internal quotation marks and citation omitted).  Since the court determined above that Adams Outdoor suffered no legally-cognizable injury as it relates to the Ordinance provisions that were not applied to its permit applications, whether the overbreadth doctrine saves Adams Outdoor's prudential standing is not a dispositive issue.

After considering standing, two claims in Count 2 remain: (1) Sign Ordinance § 156.162(P) is overbroad for prohibiting all electronic or digital analog signs, and (2) Sign Ordinance § 156.159 effectively prohibits any new off-premises signs.  Defendants do not challenge Adams Outdoor's standing to bring these claims, and it is true that resolving them in Adams Outdoor' favor would seem to redress any injury that it allegedly suffered.  The court addresses those claims in its review of Adams Outdoor's permitted facial challenges later.  Except for those claims, the court dismisses Count 2 for lack of standing.

---

[8] Contrary to Adams Outdoor's argument at the hearing and in its briefs, <u>Giovani Carandola, Ltd. v. Bason</u>, 303 F.3d 507 (4th Cir. 2002), does not contravene this principle.  <u>See</u> <u>Covenant Media of N.C., L.L.C. v. City of Monroe</u>, 285 F. App'x 30, 36 (4th Cir. 2008) (holding that the overbreadth doctrine does not "eliminate the need to demonstrate an injury in fact").

## 2. Count 3

Count 3 of the complaint alleges that the review process, as set forth by Sign Ordinance § 156.153, creates an unconstitutional prior restraint on speech. It specifically alleges that § 156.153 fails to curtail the Zoning Administrator's discretion via neutral criteria or a proper licensing scheme. Compl. ¶¶ 89–92. It also repeats the allegation that the statute fails to establish a time limit for decisions, among other procedural safeguards. Id. ¶¶ 93(b)–(c), 94–96.

Adams Outdoor faces a similar issue as it did under Count 2. In short, Adams Outdoor fails the redressability prong of Article III standing: any injury that might result from the Sign Ordinance's lack of procedural safeguards cannot be redressed in this action because the denials here were clearly not affected by the allegedly "unbridled discretion" afforded to Prause. ECF No. 40-1 at 31. Adams Outdoor sought to install digital billboards or convert existing billboards into digital billboards. They also sought to install off-premises signs. Both proposals were blocked by specific provisions in the Ordinance. See Sign Ordinance §§ 156.159, 156.162. Therefore, to the extent Prause wielded discretion with respect to other types of signages, he had "no discretion to permit or deny the billboard applications" in this case. See Granite State Outdoor Advertising, Inc. v. City of Fort Lauderdale, 194 F. App'x 754, 757–58 (11th Cir. 2006) (holding that the plaintiff lacked standing to challenge the provisions of a sign ordinance that allegedly granted the city unbridled discretion). Likewise, there are no specific claims or evidence that a delay in decision making caused a denial to be issued in this instance. As the Eleventh Circuit has persuasively explained:

> Although [the plaintiff] challenged the lack of several procedural safeguards that allegedly grant unbridled discretion to city officials, . . . [it]

22

> was not subject to those provisions because off-premise signs are never permitted under the ordinance . . . . [The plaintiff] did not allege in its complaint or present evidence that it intended to construct signs that might be permitted under the statute, which would subject [it] to the lack of procedural safeguards.  [The plaintiff] lacks standing to challenge the lack of procedural safeguards.

Advantage Advertising, LLC v. City of Hoover, 200 F. App'x 831, 835 (11th Cir. 2006).

Since each of Adams Outdoor's proposals were specifically barred by the Sign Ordinance, Adams Outdoor's only proper challenge is to those provisions themselves, not to the statute's alleged lack of procedural safeguards.[9]  Consequently, none of the claims represent an unconstitutional prior restraint because a plaintiff does not have standing to challenge an alleged prior restraint where there is no "credible threat of prosecution." Granite State, 194 F. App'x at 758.

### 3. Count 4

Finally, Count 4 alleges that defendants violated equal-protection and substantive due process rights by restricting and regulating "Off-Premises Signs" in a manner that is not content neutral.  Compl. ¶¶ 102–11.  Defendants argue that Adams Outdoor attempts

---

[9] Alternatively, Count 3 may also be resolved on the merits given that the court finds below that the statute's challenged provisions are content neutral.  If the Sign Ordinance provisions at issue are content-neutral, they are not subject to the procedural safeguards outlined in Freedman v. Maryland, 380 U.S. 51 (1965).  In Freedman, the Supreme Court held that a film licensing process must contain certain procedural safeguards in order to avoid constituting an invalid prior restraint.  Id. at 58–60; see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 227 (1990).  Later, in Thomas v. Chicago Park District, the Supreme Court explained that a permit or licensing scheme that "is not subject-matter censorship but content-neutral time, place, and manner regulation of the use of a public forum" is not subject to "the procedural requirements set forth in Freedman."  534 U.S. 316, 322 (2002).  The rule applies to sign-ordinance challenges, as the Fourth Circuit has held that where an ordinance is content-neutral, there is no basis to challenge the statute's lack of procedural safeguards, such as the lack of a required decision-making timeframe.  See Covenant Media of S.C., LLC v. Town of Surfside Beach, 321 F. App'x 251, 254 (4th Cir. 2009) (rejecting the plaintiff's argument that an ordinance was unconstitutional because it did "not require the Town to act on a permit application within a specified time").

to use substantive due process as a "catch-all provision," which is impermissible.  ECF

No. 41-1 at 15 (quoting Evans v. Chalmers, 703 F.3d 636, 646 n.2 (4th Cir. 2012)).

Although not an argument about standing, defendants' point stands.  "Where a particular

Amendment provides an explicit textual source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more generalized notion

of 'substantive due process,' must be the guide for analyzing these claims."  Albright v.

Oliver, 510 U.S. 266, 273 (1994) (citation omitted).  Building on that established

principle, courts have explained that "[a]ny concerns about the exercise of discretion

vested in City officials can be addressed in an as-applied challenge to the Ordinance's

enforcement under the First Amendment," and the First Amendment is thus "the proper

constitutional home for [] freedom of speech and press claims."  Bruni v. City of

Pittsburgh, 824 F.3d 353, 374–75 (3rd Cir. 2016) (citation omitted).  The court therefore

dismiss the fourth cause of action as iterative of the First Amendment claims that the

court considers below.

In sum, Adams Outdoor is permitted to challenge the Sign Ordinance provisions

regulating off-premises signs and digital signs to assert that those provisions

unconstitutionally infringed upon its speech.  In all other respects, the court grants

summary judgment in defendants' favor on Counts 2, 3, and 4.

**C.  Review on the Merits**

Defendants challenge the remaining causes of action in several ways.  First,

defendants argue that Count 1 must fail because the on-/off-premises distinction survives

under intermediate scrutiny.  Second, they argue that the as-applied challenge under

Count 5 similarly fails under intermediate scrutiny.  Third, they argue, in the alternative,

that any remaining claims against Prause should be dismissed. Fourth, they contend that summary judgment is warranted on Adams Outdoor's claims brought under the South Carolina Constitution. The court addresses each argument in turn, considering Adams Outdoor's arguments in favor of summary judgment where relevant.

### 1. Facial Challenge

#### a. Content-Based Regulation

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." Bucklew v. Precythe, 139 S. Ct. 1112, 1127 (2019). An ordinance that regulates speech on the basis of its content is unconstitutional unless it passes the bar of strict scrutiny. On the other hand, content-neutral "time, place, or manner" restrictions on speech trigger only intermediate scrutiny. To determine whether the ordinance provisions at issue are constitutional, the court must determine what level of scrutiny to apply. Adams Outdoor claims strict scrutiny applies, ECF No. 40-1 at 6; defendants say intermediate scrutiny, ECF No. 41-1 at 10.

As previously referenced, the Supreme Court decided a case in 2022 on whether a municipality's sign regulation that drew an on-/off-premises distinction was content neutral. City of Austin, 142 S. Ct. 1464. Defendants claim that once issued, City of Austin spelled doom for the complaint in this case because Adams Outdoor had filed it in 2020 with a focus on the on-/off-premises distinction in the Sign Ordinance. Adams Outdoor acknowledges that its dispute with the on-/off-premises distinction, Compl. ¶ 49–50, is dead in the water (and rightfully, it appears to have all but relinquished the claim), see ECF No. 40-1 at 8. But Adams Outdoor claims that the complaint raises several other types of claims that were not considered in City of Austin, and the court

should continue to rely on the preceding Supreme Court opinion in <u>Reed v. Town of Gilbert</u>, 576 U.S. 155 (2015).  Regardless of who is right, or if the reality lies somewhere in between, <u>City of Austin</u> is unquestionably worth reviewing as a starting point.

In <u>City of Austin</u>, two companies that owned outdoor billboards raised a First Amendment challenge to a municipal sign ordinance that distinguished between on-premises signs and off-premises signs.  <u>City of Austin</u>, 142 S. Ct. at 1468–70.  The Austin ordinance regulated the latter more heavily in the name of protecting public safety and preserving aesthetic value.  <u>Id.</u> at 1670.  The Fifth Circuit below found that the restriction of off-premises signs constituted a content-based regulation, and in doing so construed <u>Reed</u> "to mean that if 'a reader must ask who is the speaker and what is the speaker saying' to apply a regulation, then the regulation is automatically content based [and thus subject to strict scrutiny]."  <u>Id.</u> at 1471 (quoting <u>Reagan Nat'l Advert. of Austin, Inc. v. City of Austin</u>, 972 F.3d 696, 706 (5th Cir. 2020)).

The Supreme Court reversed, characterizing the language from the Fifth Circuit as "too extreme an interpretation" of <u>Reed</u>.  <u>Id.</u>  The Supreme Court concluded that the challenged ordinance presented no facial First Amendment violation because while enforcement of the ordinance required "reading a billboard to determine whether it directs readers to the property on which it stands or to some other, offsite location," the ordinance did "not single out any topic or subject matter for differential treatment."  <u>Id.</u> at 1472.  In other words, the reading of a sign to see if it is on-premises or off-premises advertising "do[es] not inherently present 'the potential for becoming a means of suppressing a particular point of view.'"  <u>Id.</u> at 1473 (quoting <u>Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.</u>, 452 U.S. 640, 649 (1981)).

Adams Outdoor contends that <u>City of Austin</u> is "not dispositive" because the Supreme Court solely "considered the constitutionality of a single provision within the city's ordinance," <u>i.e.</u>, the restriction of off-premises signs.  ECF No. 40-1 at 5.  The difference here, according to Adams Outdoor, is that its complaint "challenges the constitutionality of the Town's entire ordinance" instead of just the on-/off-premises distinction.  <u>Id.</u>  In the alternative, Adams Outdoor argues that the Mount Pleasant Sign Ordinance is distinguishable from the Austin ordinance because the Town went "to great lengths . . . to camouflage the Ordinance as a permissible restriction" of protected speech.  <u>Id.</u> at 6.

As a principled matter, it is difficult for Adams Outdoor to argue that the complaint escapes <u>City of Austin</u>'s ambit.  The complaint—filed in 2020—alleges that the Sign Ordinance effectively banned off-premises signs and treated that allegation as central to the action.  The complaint alleges, <u>inter alia</u>:

> On its face, the Sign Ordinance renders all existing "Off-Premises Signs" within the Town nonconforming . . . and effectively prohibits any new "Off Premises Signs" from being erected within the Town.  No other types of signs are similarly deemed nonconforming or effectively prohibited.  These restrictions of "Off-Premises Signs" in the Sign Ordinance are content-based . . . .

<u>See, e.g.</u>, Compl. ¶ 49.

Adams Outdoor's pivot away is understandable, but the solution cannot be to instead declare that the Sign Ordinance draws wholesale content-based distinctions between all types of signs, not just off- and on-premises ones.  But that is precisely what Adams Outdoor aims to do; it urges the court to consider not just the off-premises restriction in § 156.159 but also other "provisions regulating signs that qualify as off-premises."  ECF No. 40-1 at 8.  That argument, as discussed before, is untenable due to a

lack of standing. To reiterate, Adams Outdoor lacks standing to bring a facial content-based challenge to provisions regulating signs like political signs and comprehensive development project signs—even if they are functionally off-premises signs—because the constitutionality of those provisions has no bearing on Adams Outdoor's alleged injury. See GEFT Outdoor, 2023 WL 1111605, at *3–4 (intertwining the court's discussion of City of Austin with its discussion on the plaintiff's standing to challenge other provisions of the ordinance). At its core, the Supreme Court's holding in City of Austin remains applicable because defendants denied Adams Outdoor's permits with a provision that did not "appl[y] to particular speech because of the topic discussed or the idea or message expressed." City of Austin, 142 S. Ct. at 1471.

To be sure, Adams Outdoor's challenge to the ban on digital billboards was not reflected in City of Austin. But under the same reasoning, the digital sign restriction—like the off-premises restriction—is not facially content-based. Sign Ordinance § 156.162(P) provides that "electronic digital or analog signs of any size or location, in which the display or advertising material may change periodically, are prohibited." Perhaps before City of Austin, Adams Outdoor could plausibly argue that determining whether a sign was a digital sign required the Town to view the sign, thus rendering it a content-based restriction. Not so anymore. City of Austin teaches that the central inquiry is whether the regulation "single[s] out any topic or subject matter for differential treatment." 142 S. Ct. at 1472. Applying that standard to the digital-sign regulation, the regulation does not prohibit any sign based on its political or ideological message and instead draws regulatory lines only based on the form that the sign takes. When Adams Outdoor brought its challenge in Wisconsin, it similarly claimed that the City of

Madison's digital-sign ban was unconstitutional.  City of Madison II, 56 F.4th at 1119.

The Seventh Circuit affirmed the district court's ruling that the ban on digital displays fell

into the same category as the ban on off-premises signs, and the persuasive opinion

serves to confirm the court's own analysis.  Id.  The court therefore finds that both

provisions at issue are facially content-neutral and that intermediate scrutiny applies.

### b.  Intermediate Scrutiny

After determining that intermediate scrutiny applied in City of Austin, the

Supreme Court remanded the case for the lower court to apply the proper test.  See City

of Austin, 142 S. Ct. at 1475 ("This Court's determination that the City's ordinance is

facially content neutral does not end the First Amendment inquiry.").  Since then, courts

have consistently upheld on-/off-premises distinctions as constitutional under the test.

See, e.g., City of Madison II, 56 F.4th at 1120.  Under intermediate scrutiny, the Town

must show that the provisions in the Sign Ordinance further its stated interests without

burdening substantially more speech than necessary.  See Ward v. Rock Against Racism,

491 U.S. 781, 798–99 (1989).  "Narrow tailoring in the First Amendment context does

not require the government to regulate by using 'the least restrictive or least intrusive

means' available to achieve its goals, but it does prohibit the government from

'regulat[ing] expression in such a manner that a substantial portion of the burden on

speech does not serve to advance its goals.'"  Reyes v. City of Lynchburg, 300 F.3d 449,

462 (4th Cir. 2002) (J. Michael, dissenting on other grounds) (quoting Ward, 491 U.S. at

798–99).  Here, the Town adopted the view shared by numerous municipalities around

the country by claiming that it has an interest in furthering traffic-safety and aesthetic

purposes.  See ECF No. 41-1 at 11 (citing Fairway Outdoor Advertising, LLC v. City of High Point, 2022 WL 17975990, at *3 (M.D.N.C. Dec. 28, 2022)).

The Sign Ordinance survives intermediate scrutiny.  Courts have uniformly found that both on-/off-premises distinctions and digital-sign bans promote traffic safety and preserve visual aesthetics.  See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507–08 (1981) (expressing "little controversy" that the "twin goals" of "traffic safety and the appearance of the city [] are substantial governmental goals"); City of Madison II, 56 F.4th at 1120 ("Prohibiting digital signs serves Madison's stated interests in promoting traffic safety and preserving visual aesthetics.").  The Sign Ordinance is narrowly tailored to serve those interests.  Neither the off-premises sign restriction or digital-sign ban substantially affects the availability of fora open to commercial speakers.  Adams Outdoor only cursorily argues that the Sign Ordinance fails under intermediate scrutiny, arguing that the Town's stated goals of furthering its aesthetic or traffic safety interests "are a canard," and its true purpose is "to cripple the advertising sign industry."  ECF No. 40-1 at 15.  But Adams Outdoor provides little support for this assertion,[10] and the court finds that the Ordinance is a suitable time-place-manner restriction.

---

[10] Adams Outdoor briefly argues, for instance, that at Town Council meetings, some committee members mentioned that they did not like the appearance of digital billboards and that the billboards were unpopular among constituents.  ECF No. 40-1 at 14 (citing ECF Nos. 40-12, 40-13).  When it comes to evaluating facial challenges, however, the Supreme Court has cautioned against "striking down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."  City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48 (1986).  "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."  Id.  The stated purposes of promoting traffic safety and visual aesthetics are both established ends, and together, they guide the court's analysis instead.

For similar reasons, the court finds that the digital-sign restriction survives Adams Outdoor's overbreadth challenge. An overbreadth claim challenges the constitutionality of an ordinance that "sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." Reyes, 300 F.3d at 462. The court determined above that Adams Outdoor had standing to challenge the digital-sign restriction on overbreadth grounds under Count 2. But the digital-sign restriction is narrowly tailored to promote the Town's interests in traffic safety and aesthetics within this context as well. Adams Outdoor does not (and cannot) argue that the Town selectively restricts more digital signs than necessary because the Town categorically bans all digital signs. The lack of selective enforcement underscores that the Town's consistent "implementation and interpretation" of the ordinance is meant to serve safety and aesthetic purposes. Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 131 (1992). In other words, it is reasonable for the Town to contend that its goals are only served by a blanket prohibition rather than selective enforcement, and Adams Outdoor has not demonstrated an application where the rule would not be needed to serve those interests. For these reasons, the court grants summary judgment in defendants' favor on the first and second causes of action.

### 2. As-Applied Challenge

"An 'as-applied' challenge consists of a challenge to a regulation's application only to the party before the court.'" Newsome ex rel. Newsome v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 257 n.4 (4th Cir. 2003) (citing City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 758–59 (1988)). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." Id. (citing

City of Lakewood, 486 U.S. at 758–59).  In addition to arguing that the statute is facially

unconstitutional, Adams Outdoor argues that the Sign Ordinance was unconstitutionally

applied to the company's permit applications.  ECF No. 40-1 at 30.  As discussed in the

standing analysis—but of equal importance here—the Town's denial letters specifically

stated that the denials were issued because the proposed billboards sought to modify

signs into digital signs and because they exceeded the size and height requirements for

off-premises signs.  See generally ECF No. 40-9.  Nothing in the letters suggested any

other motive for the denials.

        To dodge that issue, Adams Outdoor makes three broad contentions.  First, Prause

and the Town purportedly made statements showing an intent to single out Adams

Outdoor when denying its applications.  ECF No. 40-1 at 30.  Part and parcel with that

claim, Adams Oudoor also asserts that the Town departed from its usual permit-

application process by not meeting with Adams Outdoor prior to denying its application.

Id. at 31.  Second, the Sign Ordinance itself was allegedly written in a way that singles

out the company for disparate treatment.  Third, defendants unequally applied the

Ordinance's prohibition on off-premises signs to other entities.  The court consider each

argument in turn.

        Under Adams Outdoor's theory in the first argument, Prause referred to Adams

Outdoor's signs as "billboards" even though the application did not refer to the proposed

signs in that way.  ECF No. 40-1 at 30.  He therefore must have observed that the permits

were submitted by a "billboard" company, and necessarily looked to the speaker rather

than just the substance of the applications.  Id.  Importantly, however, Prause's written

decision did not depend on the sign's content or the company applying for the permits.

Rather, the decision turned on whether the sign was in the proper zoning district, whether it met certain size measurement requirements, and whether the proposed signs were digital. Like in <u>City of Madison I</u>, where a similar argument about procedural irregularities was raised by the plaintiff, the Ordinance provisions here contain "very particular requirements" that "contain enough specificity to render the decision of whether to grant or deny an application virtually ministerial." 2020 WL 1689705, at *22. To the extent that the Sign Provision vested the Zoning Administrator with too much discretion to grant or deny certain permit applications, such discretion could not have been exercised here.

Second, Adams Outdoor claims that the Sign Ordinance itself was written in a way to single out billboard companies like Adams Outdoor. The court construes this to be an argument about the process in which the Ordinance was created and applied instead of a challenge to the text of the Ordinance—the latter which the court has already addressed. In support of its claim, Adams Outdoor attaches meeting minutes from the Town's Signage Review Committee that purportedly show a decade-long pattern of "prejudicial and hostile conduct" towards Adams Outdoor and attempts to reduce the company's operations—all of which supposedly evince a plan to "single out Adams for disparate treatment." ECF No. 40-1 at 30 (citing ECF Nos. 40-18, 40-19). In response, defendants argue that Adams Outdoor has selected the wrong "comparator" and that to properly make a disparate impact claim, Adams Outdoor must show that the Town treated plaintiff differently than other outdoor advertising companies. ECF No. 49 at 11.

Adams Outdoor is right that it can challenge how the Ordinance was applied to it vis-à-vis other sign owners (not just billboard operators), but not for the reasons it

articulates.  Importantly, Adams Outdoor brings a First Amendment claim, not a disparate impact claim.  Classifying a lawsuit as facial or as-applied only affects "the extent to which the invalidity of the challenged law must be demonstrated," but "it does not speak at all to the substantive rule of law necessary to establish a constitutional violation."  Bucklew, 139 S. Ct. at 1127 (citing Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010)).  Therefore, the issue remains whether the Town sought to restrict Adams Outdoor's speech based on its content.

Under that framework, the court finds that the as-applied challenge fails.  First, as far as the court can tell, none of the Town meeting minutes directly concerned Sign Ordinance §§ 156.159 and 156.162, which were the provisions applied by Prause.  Moreover, nothing in the meeting minutes and other supporting exhibits suggest a failure of the means-end test applied above.  While the minutes reflect that the Town saw "Billboards" as a type of signage it was "trying to tackle" (among a host of other issues, such as digital signs and size and square footage of signs), ECF No. 40-18 at 4, there is nothing inherent in that approach that suggests the Town departed from the calculus referenced in the court's prior application of intermediate scrutiny—i.e., legislating with an eye toward traffic safety and aesthetics.  Adams Outdoor's refrain that it "does not seek to install or maintain [] billboards" because it seeks to install "off-premises signs" is semantic.  At bottom, the factors that led the Town to install the Ordinance regulations were applied evenly and survive the rigors of intermediate scrutiny.

Third, Adams Outdoor argues that even among off-premises signs, Adams Outdoor's permits were singled out based on content.  If true, Adams Outdoor may have a compelling argument that the Sign Ordinance was applied in a content-based manner to

its speech.  But the examples provided by Adams Outdoor are no longer valid, if they ever were.  Adams Outdoor first points to more than twenty off-premises signs displaying messages from commercial sponsors that were placed at a school in the Charleston County School District.  See ECF No. 40-20.  It also raises an issue with an additional ten off-premises signs displaying commercial messages that were allegedly placed by the Town itself on its own property.  See ECF No. 40-21.  Together, the signs allegedly represent the Town's willingness to apply the Ordinance favorably for other owners or operators.

Defendants acknowledge that the signs were put up and that they were indeed prohibited as off-premises signs.  ECF No. 49 at 13.  But no sign permit applications were ever submitted by either the corporate sponsors or the Town's employees for those signs.  ECF No. 50, Robertson Aff. ¶ 2.  According to the current Zoning Administrator, the signs were inadvertently placed there and, importantly, have all since been removed. Id.  Indeed, the fact that the signs were removed by the Town upon being notified is consistent with a content-neutral application of the Sign Ordinance.  To the extent Adams Outdoor argues that the court should read more into the impermissible sign placement prior to the removal, the court declines to do so.  Even viewing the evidence in the light most favorable to Adams Outdoor, the sign placement at most amounts to negligence by the Town.  And, as defendants correctly note, mere negligence "does not amount to an intent to violate [a plaintiff]'s First Amendment rights."  North Charleston, 493 F.3d at 437 (cited at ECF No. 49 at 13 n.5).  Having reviewed each of Adams Outdoor's grounds for an as-applied challenge and its supporting evidence, the court grants summary judgment in defendants favor on Count 5.

### 3. Prause

To the extent that the court does not grant summary judgment in defendants' favor on any of the preceding grounds, defendants request that the court dismiss Prause as a defendant based on qualified immunity and because Prause has retired from his position as the Zoning Administrator. Since the court grants summary judgment in defendants' favor on all grounds, the issue is moot, and the court does not reach the alternative bases raised for dismissing Prause.

### 4. South Carolina Constitution

The complaint scatters references to violations of the South Carolina Constitution. In each instance, the complaint essentially alleges that the claimed First Amendment violation also constitutes a violation of a parallel provision in the South Carolina Constitution. See, e.g., Compl. ¶ 58 (alleging, under Count 1, that "[b]y making content-based distinctions," the Sign Ordinance violates Art. 1, § 2 of the South Carolina Constitution); id. ¶ 84 (alleging, under Count 2, that the Sign Ordinance was vague, ambiguous, and overbroad in violation of Art. 1, §§ 2 and 3 of the South Carolina Constitution); id. ¶ 97 (alleging, under Count 3, that the Sign Ordinance was an unconstitutional prior restraint in violation of Art. 1, § 2 of the South Carolina Constitution). Defendants argue that the court's analysis of the First Amendment issues should apply equally to the claims under the South Carolina Constitution such that the claims under the South Carolina Constitution should be resolved in the same manner as the First Amendment claims. At the hearing, Adams Outdoor concurred that the claims should be resolved in the same way.

That approach accords with the law.  The South Carolina Supreme Court has emphasized that Article I, § 2 of the South Carolina Constitution does not provide any "greater free speech rights" than the First Amendment of the United States Constitution. Charleston Joint Venture v. McPherson, 417 S.E.2d at 548 n.7 (S.C. 1992) (citing Prune Yard Shopping Ctr. v. Robins, 447 U.S. 74 (1980)); see id. ("Our constitution affords the same protections as does the Federal constitution.").  Since the court grants summary judgment in favor of defendants on Adams Outdoor's First Amendment claims, the court grants summary judgment in favor of defendants on the mirroring claims under the South Carolina Constitution.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** defendants' motion for summary judgment and **DENIES** Adams Outdoor's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 12, 2023**
**Charleston, South Carolina**